Michael D. WEBB, Plaintiff,

v.

AIRLINES REPORTING CORPO-
RATION and Richard A. Coot-
er, Defendants.

Civ. A. No. 92–2488–0.

United States District Court,
D. Kansas.

June 1, 1993.

274

Lynn R. Johnson, Shamberg, Johnson, Bergman & Morris, Chtd., Overland Park, KS, Steven G. Brown, Kansas City, MO, Mark A. Buck, Gary D. McCallister, Davis, Unrein, Hummer, McCallister & Buck, Topeka, KS, for plaintiff.

John J. Jurcyk, Jr., Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Airlines Reporting Corp.

Richard A. Cooter, Alexandria, VA, for Richard A. Cooter.

*MEMORANDUM AND ORDER*

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of defendant Airlines Reporting Corporation ("ARC") for summary judgment (Doc. # 10) and the motion of defendant Richard A. Cooter for summary judgment (Doc. # 20). For the reasons set forth below, the motions of both defendants will be denied in part and granted in part.

*Factual Background*

For purposes of these summary judgment motions, the following facts are uncontroverted. On June 28, 1990, Airlines Reporting Corporation ("ARC") filed a complaint for breach of contract in the United States District Court for the District of Kansas, Case No. 90–2227–V. Defendant Cooter served as ARC's counsel throughout the case. ARC's complaint named Travel Services Clearinghouse ("TSC") and Michael D. Webb ("Webb"), the president and a director of TSC, as defendants. ARC sought $506,931.79 in damages for the value of airline tickets ordered by and sold to TSC from August 1986 through March 1987. ARC also alleged that Webb had executed a personal guaranty for TSC's monetary obligations to ARC.

Webb filed a motion for summary judgment on ARC's guaranty claim. The motion was denied and a bench trial was held before Judge G.T. Van Bebber on September 19, 1991. TSC was defunct by this time and did not appear for trial. The court entered a default judgment against TSC. Thus, the real issue at the trial was whether Webb was liable for TSC's debt. The court held that although ARC possessed a witnessed and notarized guaranty on which Webb had handprinted his name (but not signed) as personal guarantor, Webb was not liable on the guaranty because handprinting did not constitute a signature under the Kansas Statute of Frauds. The court declined to apply the Uniform Commercial Code definition of signature, as urged by ARC, holding that the UCC was not applicable under the circumstances of the case. On November 12, 1991, the court ordered the entry of judgment in favor of Webb and ordered ARC's claim against Webb dismissed on the merits. No

appeal was taken within the thirty-day period permitted by Federal Rule of Appellate Procedure 4(a)(1). On December 14, 1992, Webb filed the complaint in the instant case against ARC and Cooter alleging malicious prosecution, abuse of process, defamation, tort of outrage, and fraud.

### Summary Judgment Standards

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. An issue is "material" only when the controversy is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, establishing for the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Under Rule 56(a), summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

### Statute of Limitations

Defendants seek summary judgment on Webb's claims for malicious prosecution and abuse of process claiming that the claims are barred by the one-year statute of limitations, Kan.Stat.Ann. § 60–514. In Kansas,[1] actions for malicious prosecution must be brought within one year. *Id.* at § 60–514(2).

The facts on this issue are not in dispute. Defendants claim that Webb's cause of action accrued with the termination of the prior suit, which occurred at the latest on November 13, 1991, the date of entry of judgment. Thus, defendants contend, Webb's claims must be dismissed because they were barred as of November 13, 1992. Webb counters that his claims did not accrue until the time

for filing a notice of appeal expired on December 13, 1991. Webb therefore concludes that his claims are not barred because he had until December 13, 1992, to file.

■ A cause of action accrues when the right to maintain a legal action first arises. *Johnston v. Farmers Alliance Mutual Ins. Co.,* 218 Kan. 543, 545 P.2d 312, 316–17 (1976). In *Pancake House, Inc. v. Redmond,* the Kansas Supreme Court held, "[a]n action for malicious prosecution cannot be brought if the original action is still pending and undetermined." 239 Kan. 83, 716 P.2d 575, 580 (1986). Similarly, in *Nelson v. Miller,* 227 Kan. 271, 607 P.2d 438, 443 (1980), the court held an essential element of a claim for malicious prosecution is the termination of the prior civil proceeding in favor of the aggrieved party. Termination can occur by a "favorable adjudication of the claim by a competent tribunal" (i.e., entry of judgment in favor of the party alleging malicious prosecution). *Id.* 607 P.2d at 445.

■ The Kansas Court of Appeals in *Hutchinson Travel Agency, Inc. v. McGregor,* 10 Kan.App.2d 461, 701 P.2d 977 (1985) and *H & H Farms, Inc. v. Hazlett,* 6 Kan. App.2d 263, 627 P.2d 1161 (1981) discussed the validity of a malicious prosecution action as a counterclaim. The court said, " 'A plaintiff's cause of action for malicious prosecution does not accrue until the time for appeal has passed on the original action.' " *Hutchinson,* 701 P.2d at 979 (quoting *H & H Farms,* 627 P.2d at 1167). Although the instant case presents a somewhat different question because Webb brings the malicious prosecution claim as a separate action rather than a counterclaim, we believe that the Kansas Supreme Court would follow the majority of states and apply the rule enunciated by the Kansas Court of Appeals in *Hutchinson* and *H & H Farms* to the facts here.

The court in *Barrett Mobile Home Transp., Inc. v. McGugin,* 530 So.2d 730 (Ala.1988), provided the best explanation for the rule. Accrual of a cause of action for malicious prosecution from the time of entry

---

1. When our jurisdiction is based upon diversity, we apply state substantive law and federal procedural law. *Hanna v. Plumer,* 380 U.S. 460, 471–

74, 85 S.Ct. 1136, 1144–46, 14 L.Ed.2d 8 (1965); *City of Aurora v. Erwin,* 706 F.2d 295, 297–99 (10th Cir.1983).

of judgment would result in wasted judicial resources. If the filing of an appeal occurred after the filing of the malicious prosecution action, the malicious prosecution claim would be subject to dismissal as premature because the plaintiff would not have obtained a favorable termination of the underlying case. *Id.* at 733. *See also Mo–Kan Teamsters Pension Fund v. Creason,* 669 F.Supp. 1532, 1542–43 (D.Kan.1987) (citing *Hutchinson,* 701 P.2d at 979); *Cazares v. Church of Scientology, Inc.,* 444 So.2d 442, 447 (Fla.Ct.App. 1983) ("The statute of limitations for a malicious prosecution action would not start until the appeal was decided, or the time for taking such an appeal had expired, because the cause of action would not accrue until the last element [termination favorable to the plaintiff] occurred.").

Defendants distinguish these cases in that no appeal was taken in the instant case. This is a distinction without a difference. The rationale behind the rule that the statute of limitations runs from the expiration of the time for appeal has equal applicability to the instant case. A claim for malicious prosecution would have been premature had an appeal been filed. The court believes that the Kansas Supreme Court, if presented with this question under the circumstances of this case, would hold that Webb's cause of action accrued on December 13, 1991, the final day on which an appeal could have been filed.

*Abuse of Process Claim*

Having held that plaintiff's claims accrued on December 13, 1991, we need not discuss the question of which statute of limitations governs plaintiff's claim for abuse of process. Even under the one year statute of limitations, plaintiff's claim was not barred.

*Outrage Claim*

Defendants also seek summary judgment on plaintiff's claims for the tort of outrage. Defendants contend that, as a matter of law, Webb failed to allege facts to satisfy the threshold requirements for a tort of outrage claim. In an outrage claim, two threshold inquiries must be decided by the court: 1) whether the defendants' conduct may reasonably be regarded as having been so extreme and outrageous to permit recovery; and 2) whether Webb suffered emotional distress so severe that "no reasonable person should be expected to endure it." *Burgess v. Perdue,* 239 Kan. 473, 721 P.2d 239, 242 (1986). *See also Roberts v. Saylor,* 230 Kan. 289, 637 P.2d 1175, 1179 (1981). In determining whether defendants' conduct was outrageous, the court is mindful of the Kansas Supreme Court's statement,

> "[i]t should be understood that liability does not arise from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind.... Conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society."

*Roberts v. Saylor,* 637 P.2d at 1179.

Webb argues that the court should not grant summary judgment at this stage of the litigation because plaintiff has not completed discovery. Clearly, recovery on an outrage claim depends on the facts and circumstances of each individual case. *Roberts v. Saylor,* 637 P.2d at 1179; *Dotson v. McLaughlin,* 216 Kan. 201, 531 P.2d 1 (1975). However, it does not follow, as Webb contends, that the plaintiff must be allowed to complete discovery before the court may consider the defendants' motions.

Contrary to Webb's contention, the court is not deciding summary judgment based solely on Webb's complaint. The court has carefully considered Webb's affidavit and finds that additional discovery on this issue is not necessary. The threshold inquiry focuses on defendants' conduct. Webb's affidavit provides a lengthy and detailed account of Webb's version of defendants' actions. Webb does not claim that further discovery will supplement his factual allegations regarding defendants' conduct. Rather, Webb apparently believes that additional discovery is necessary to ascertain what the defendants knew at the time. We disagree.

■ Even assuming Webb's version of the facts are true and defendants acted as Webb alleges knowing that Webb suffered from physical impairments, defendants are entitled to summary judgment as a matter of law. Defendants' actions, as alleged by Webb, were not so outrageous in character or so extreme in degree as to go beyond the bounds of decency. Nor were they so atrocious as to be regarded as utterly intolerable in a civilized society. *Roberts v. Saylor*, 637 P.2d at 1179.

At most, Webb has alleged facts showing that defendants handled the case in a less than courteous or professional manner. Under Kansas law, this is not enough to recover for the tort of outrage. *See, e.g., Burgess v. Perdue*, 721 P.2d at 243 (mother who was told that her son's brain was in a jar could not maintain an action for outrage); *Neufeldt v. L.R. Foy Constr. Co., Inc.*, 236 Kan. 664, 693 P.2d 1194, 1198 (1985) (no outrage claim allowed by a wife recovering from a miscarriage who was falsely told that an arrest warrant had been issued for her husband); *Roberts v. Saylor*, 637 P.2d at 1180–81 (patient who was told by her former doctor, as she was being prepared for surgery, that he did not like her was not allowed to maintain an outrage claim).

Webb relies on *Dawson v. Associates Fin. Serv. Co. of Kan.*, 215 Kan. 814, 529 P.2d 104 (1974), one of the few cases in which the Kansas Supreme Court has held that the defendant's conduct was extreme and outrageous. *See Burgess v. Perdue*, 239 Kan. 473, 721 P.2d at 242–43. In *Dawson*, a creditor, knowing that the debtor had multiple sclerosis, repeatedly harassed the debtor about paying the debt. *Dawson*, 529 P.2d at 107–09. The debtor had financed an automobile through the creditor and had also purchased a health and accident insurance policy from the creditor. The court stressed that the creditor's conduct was particularly egregious because of the creditor's refusal to pay the debtor's claims on the insurance policy which the creditor had sold to her. *Id.*, 529 P.2d at 113.

There are similarities between *Dawson* and the instant case. Webb's illness is comparable to the multiple sclerosis suffered by the plaintiff in *Dawson*. The defendants in both cases were aware of the plaintiff's condition. However, the defendants' actions in the instant case fall far short of the outrageous conduct which entitled the plaintiff in *Dawson* to maintain an action for the tort of outrage. ARC did not issue Webb any type of insurance policy on which it later refused to pay claims. Nor did ARC call Webb daily to harass and threaten him about payment. ARC was entitled to prosecute the underlying action to judgment regardless of Webb's monetary or physical condition. Moreover, defendants had a good faith basis in law, given the broad definition of "signature" in the Kansas Uniform Commercial Code, to assert that Webb's handwritten name constituted his signature. That the defendants may have acted in a discourteous manner in pursuing ARC's legal rights does not amount to outrageous conduct.

In his memorandum in opposition to defendants' summary judgment motions, Webb requests dismissal of his defamation and fraud claims. Accordingly, Webb's fraud and defamation claims will be dismissed with prejudice.

IT IS THEREFORE ORDERED that defendant ARC's motion for summary judgment (Doc. # 10) is denied as to the malicious prosecution and abuse of process claims and granted as to plaintiff's outrage claim.

IT IS FURTHER ORDERED that defendant Cooter's motion for summary judgment (Doc. # 20) is denied as to the malicious prosecution and abuse of process claims and granted as to plaintiff's outrage claim.

IT IS FURTHER ORDERED that plaintiff's claims for fraud and defamation against both defendants are dismissed with prejudice.